In September 1998, Carlos D. Jones sued Ruth F. Lanthrip and her employer, the Sylacauga Board of Education (the "Board"), alleging that Lanthrip had negligently caused the school bus she was driving to collide with his vehicle. Jones also alleged that the Board had negligently entrusted the school bus to Lanthrip. The Board moved for a summary judgment on the negligent-entrustment claim, and the trial court granted that motion. (That claim is not an issue on this appeal.) Lanthrip and the Board then moved for a summary judgment on the negligence claim, contending that Jones is judicially estopped from pursuing that claim. The trial court entered a summary judgment for Lanthrip and the Board on that claim. Jones filed a postjudgment motion. Before the trial court ruled on his postjudgment motion, Jones appealed the summary judgment to the supreme court; that court transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6). After the trial court denied Jones's postjudgment motion, Jones appealed that denial to this court. Pursuant to Rule 4(a)(5), Ala. R. App. P, the first notice of appeal was held in abeyance until the trial court ruled on the denial of the postjudgment motion; therefore, we dismiss the second notice of appeal.
A motion for summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala.R.Civ.P. See West v. Founders Life Assurance Co. of Florida,547 So.2d 870 (Ala. 1989), and Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794 *Page 683 
(Ala. 1989), for a discussion of the application of the substantial-evidence rule.
Lanthrip and the Board argued in their summary-judgment motion that Jones was judicially estopped from suing them because he had not disclosed his potential lawsuit against them on a Chapter 13 bankruptcy petition. The accident occurred on April 9, 1998. On April 24, 1998, Jones filed a Chapter 13 bankruptcy petition. Chapter 13 allows an individual to repay creditors over a period of up to five years according to a court-approved plan. Jones's plan was approved by the bankruptcy court on October 15, 1998, about one month after he had filed this lawsuit. Jones did not list any claim or lawsuit based on the accident as a possible claim of his bankruptcy estate. The record indicates that Jones has not received a discharge from the bankruptcy court. Jones has not amended his petition to include this lawsuit, and apparently he does not intend to amend his petition.
Our supreme court has recently discussed the application of judicial estoppel in a Chapter 13 bankruptcy context, inJinright v. Paulk, 758 So.2d 553 (Ala. 2000). The facts of this case are almost identical to the facts in Jinright, except for the fact that the Jinrights had amended their bankruptcy petition to list their lawsuit against Paulk, while Jones has not amended his bankruptcy petition. Justice Lyons, writing for the court in Jinright, stated:
 "The doctrine of judicial estoppel `applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system[,] while equitable estoppel focuses on the relationship between the parties to the prior litigation.' Selma Foundry Supply Co. v. Peoples Bank Trust Co., 598 So.2d 844, 846 (Ala. 1992) (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir.), cert. denied, 488 U.S. 967 (1988)). The doctrine is applied to uphold the integrity of the judicial system. Chandler v. Samford University, 35 F. Supp.2d 861 (N.D.Ala. 1999). However, this Court has recognized a number of limitations upon the rule against asserting inconsistent positions in judicial proceedings.
 "`"[T]he following have been enumerated as essentials to the establishment of an estoppel under the rule that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action: (1) The inconsistent position first asserted must have been successfully maintained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; and (6) it must appear unjust to one party to permit the other to change."'"
 "28 Am.Jur.2d § 70 Estoppel and Waiver (1966) (as quoted with approval in Porter v. Jolly, 564 So.2d 434, 437
(Ala. 1990)). Thus, a party may not claim the benefit of the doctrine of judicial estoppel unless the party can demonstrate that the party against whom the estoppel is sought procured a judgment in its favor as a result of the inconsistent position taken in the prior proceeding. Moreover, the party claiming the estoppel must have been misled by the conduct of the party against whom the estoppel is sought, and consequently changed its position to its prejudice. Id.
 "Paulk and Option Builders rely on two cases in which this Court applied the doctrine of judicial estoppel to preclude a plaintiff who failed to disclose a claim in a bankruptcy proceeding from pursuing related litigation. In Luna v. Dominion Bank of Middle Tennessee, *Page 684 Inc., 631 So.2d 917, 918 (Ala. 1993), we noted that `[a] debtor in [a bankruptcy proceeding] must disclose any litigation likely to arise in a nonbankruptcy [context].' In Bertrand v. Handley, 646 So.2d 16, 18 (Ala. 1994), we stated that in Luna we had `held that the doctrine of judicial estoppel applies to estop a debtor from suing on a claim where the debtor has failed to disclose the claim in an earlier bankruptcy proceeding.' We applied that holding in Bertrand. As we will discuss, those cases are distinguishable from the case now before us.
 "First, however, a review of bankruptcy law will be helpful in understanding the features of this case that distinguish it from Luna and Bertrand. United States Bankruptcy Judge Margaret A. Mahoney provides an excellent discussion in In re Griner, 240 B.R. 432
(Bankr.S.D.Ala. 1999):
 "`Chapter 13 is a hybrid of chapters 7 and 11. Chapter 13 is more like chapter 11 (the reorganization chapter used primarily by business debtors) than chapter 7 (the liquidation chapter of the Bankruptcy code). Chapter 13 is available to individuals who earn a regular income. Debtors propose a plan by which they will repay some or all of their debts through regular payments to a chapter 13 trustee. The trustee pays the sums collected to creditors according to the plan for a period of up to five years. The trustee is not involved in the daily lives of the debtors. He or she does not take possession of debtors' nonexempt assets or monitor ordinary course usage of assets. The trustee does not receive any of the debtors' earnings except what is paid to him or her as prescribed by the chapter 13 plan.
 "`In chapter 11 cases, unless a trustee has been appointed by the court, there is no trustee. The debtor handles all of his or her own affairs. This includes use, sale or lease of all assets. In chapter 7, a trustee is automatically appointed in each case. The debtor relinquishes all authority over his or her nonexempt assets.
 "`A chapter 7 trustee has one power which is specifically not given to a chapter 13 trustee. Under 11 U.S.C. § 704(l), a chapter 7 trustee "shall collect and reduce to money property of the estate." "Property of the estate" is all nonexempt assets in which the debtor had an interest before bankruptcy, such as a cause of action for a work related injury. 11 U.S.C. § 541. This power therefore compels a chapter 7 trustee to take over all nonexempt lawsuits of the debtor.
 "`In a chapter 13 case, unless otherwise specifically provided by the [debtor's] plan, a debtor remains in possession of all of his or her assets pre-and postconfirmation. 11 U.S.C. § 1306(b). This is in contrast to chapter 7 cases where the trustee `collects (takes control of) and reduces to money' all nonexempt assets. . . .'
"240 B.R. at 436.
 "The Jinrights filed a bankruptcy proceeding under Chapter 13, under which debtors may repay their creditors while maintaining their assets in accordance with a plan developed by the debtors with the approval of the bankruptcy court and their creditors. Those plans may be amended at any time, and last for up to five years. The debtors are not discharged until they have fulfilled the terms of their plans. The Jinrights have not yet received a discharge in bankruptcy.
 "The debtor in Luna filed a Chapter 7 bankruptcy proceeding; in such a proceeding the bankruptcy court liquidates the debtor's assets, if any, and pays creditors whatever funds are available. Most Chapter 7 plans are concluded quickly, and the debtors are discharged when the funds obtained from the liquidation of their assets have been distributed. Luna did not file his lawsuit until some 18 months after he had received *Page 685 
his bankruptcy discharge. Furthermore, the defendant in Luna's action was one of the creditors in the bankruptcy proceeding, a proceeding in which Luna had failed to disclose his potential claim against the defendant. This Court applied the doctrine of judicial estoppel to prevent the debtor from suing his creditor after the conclusion of earlier bankruptcy proceedings in which he failed to disclose his claim. Luna, 631 So.2d at 918-19.
 "The debtor in Bertrand obtained a default judgment in her lawsuit against the defendant, before she commenced her bankruptcy proceedings. She initially filed for bankruptcy protection under Chapter 13, but dismissed that case and refiled, the second time under Chapter 7. After she received her bankruptcy discharge, the defendant sought to set the default judgment aside. This Court applied the doctrine of judicial estoppel to prevent her from pursuing the claim on which the judgment was based, because she had not disclosed the default judgment in her bankruptcy proceeding. Bertrand, 646 So.2d at 19.
 "The Jinrights' case is more on point with Selma Foundry, a case in which the plaintiff/debtor omitted its claim against the defendant from its initial bankruptcy disclosures, but filed amended disclosure statements approximately three months later; there was no indication that the bankruptcy court or the defendant took any action in reliance on the initial disclosure statements. This Court refused to apply the doctrine of judicial estoppel. 598 So.2d at 847.
 "The purpose of the doctrine of judicial estoppel will not be accomplished, but, rather, will be frustrated if defendants are allowed to use this doctrine to their advantage at the expense of plaintiffs with valid claims. Paulk and Option Builders will receive a windfall if they are allowed to escape any potential liability to the Jinrights on the basis that the Jinrights failed to list their potential claim in their initial bankruptcy proceeding, even though the bankruptcy court and the trustee have now been fully informed about the lawsuit and the Jinrights' potential claim. Judge Mahoney discussed this problem in In re Griner. We find her order to be well reasoned and instructive:
 "`Defendants also contend that the doctrine of judicial estoppel bars Sidney Griner from prosecuting or continuing the state court action. This doctrine precludes a party from assuming a position in a legal proceeding inconsistent with a position previously asserted. Luna v. Dominion Bank of Middle Tennessee, Inc., 631 So.2d 917, 918
(Ala. 1993).
"`. . .
 "`In Luna, the Supreme Court of Alabama stated that, "judicial estoppel applies, where a debtor in bankruptcy proceedings fails to disclose any claim that may be presented in a nonbankruptcy [context], to estop the debtor from presenting the claim." Id. at 919. Luna was precluded from pursuing his state court suit because it arose prepetition and he failed to disclose it in his bankruptcy proceedings. Travelers contends that the Luna
decision governs this case. The Court finds Luna
distinguishable for the following reasons:
 "`First, Luna brought claims against a creditor of his and related entities. Luna's claims were related to a prepetition claim held by the creditor which was discharged in Luna's bankruptcy case prior to his filing suit in state court. If the creditor knew about Luna's claim against it, the creditor may have been able to offset the claims or take some other action in Luna's bankruptcy case that was not available because it was unaware that the bankruptcy estate included a claim against it. Travelers is not a creditor in the [Griners'] bankruptcy case. Travelers and all of the *Page 686 
defendants in Sidney Griner's state court suit are not prejudiced by Griner's failure to list the suit against them as an asset. See, Donato [v. Metropolitan Life Ins. Co.], 230 B.R. 418 [ (N.D.Cal. 1999)] (judicial estoppel found not to bar debtor's lawsuit because defendant was not a creditor in debtor's case and debtor would not benefit by omission of suit from her schedules).
 "`Second, the bankruptcy court relied on Luna's schedules in granting him a discharge. Prior to granting the discharge, the court was never made aware of Luna's claim against the creditor. Thus, the court's integrity was impinged by Luna's failure to list the suit as a prepetition asset. Consolidated Stores, Inc. v. Gargis, 686 So.2d 268, 274 (Ala.Civ.App. 1996)[, overruled on other grounds, Bleier v. Wellington Sears Co., 757 So.2d 1163 (Ala. 2000)] (judicial estoppel serves to protect the integrity of the judicial proceedings). In this case, the Griners have not yet received a discharge and they amended their bankruptcy papers to include the state court suit. The initial omission of the suit did not impinge upon this Court's integrity.
 "`The fact that Luna, unlike the Griners, never amended his bankruptcy schedules and chapter 13 plan is also an important distinction. See, Selma Foundry and Supply Co., Inc. v. Peoples Bank and Trust Co., 598 So.2d 844, 847 (Ala. 1992) (debtor not judicially estopped from asserting a suit which was not included in its original disclosure statement since debtor listed the suit in an amended disclosure statement); Chandler v. Samford University, 35 F. Supp.2d 861 (N.D.Ala. 1999) (court judicially estopped debtor from pursuing discrimination action in part because she deliberately manipulated the courts when she chose not to amend her schedules to reflect the action as an asset of her bankruptcy estate). The Griners' amendment corrects their initial mistake and makes any nonexempt amount recovered from the state court suit available for distribution to creditors. Their election to amend their schedule of exemptions to include an "unknown" portion of Mr. Griner's state court suit does not change the Court's conclusion. The Griners have the right to amend their schedule of exemptions "at any time before the case is closed." Fed.R.Bankr.P. 1009. True, such amendments are precluded if the debtors concealed the asset. Doan v. Hudgins (In re Doan), 672 F.2d 831, 833 (11th Cir. 1982). However, there is no evidence that the Griners attempted to conceal the suit. In fact, they listed it in their initial statement of affairs. Id. (debtors disclosed tax refund in initial filing and they therefore were permitted to amend schedules to claim tax refund as exempt).
 "`Finally, Luna failed to indicate that he had a cause of action in any of his bankruptcy documents. Luna, 631 So.2d at 919. The Griners initially listed their suit against Travelers in their statement of affairs. This supports the conclusion that the Griners mistakenly omitted their suit from their bankruptcy schedules and did not intentionally conceal a possible asset from their creditors.
"`. . .
 "`Travelers contends that whether the Griners attempted to conceal the lawsuit is irrelevant and the Griners should be judicially estopped merely because they were aware of the cause of action prior to filing bankruptcy and did not include it as an asset in their schedules. The Court finds that whether Alabama or federal common law governs, mere knowledge or awareness on the part of the debtor is not sufficient to find that judicial estoppel applies. Judicial estoppel requires an intent that the court accept *Page 687 
the truth of the facts alleged coupled with the receipt of an advantage from the assertion, Consolidated Stores, Inc., 686 So.2d at 274, 275 (Alabama law), or that the debtor obtains a benefit by deliberate manipulation. Chandler v. Samford University, 35 F. Supp.2d 861, 863 (N.D.Ala. 1999) (federal law); In re Daniel, 205 B.R. 346, 348 (Bankr.N.D.Ga. 1997) (judicial estoppel found not to preclude debtor's amendment because no evidence was presented that debtor intentionally or fraudulently concealed lawsuit). For the reasons mentioned above, especially because the Griners initially listed the suit in their statement of affairs, Travelers did not prove that the Griners intended to conceal Mr. Griner's state court suit or received a benefit from their initial omission of the suit. Consequently, Sidney Griner is not judicially estopped from continuing his state court suit.
"`. . .
 "`Travelers' position is overly harsh and inequitable as well. Everyone, except Travelers, loses under its theory. If a debtor fails to include assets on his schedules and later seeks to add them, the Bankruptcy Rules allow it "as a matter of course at any time before the case is closed." Fed.R.Bankr.P. 1009(a). A bankruptcy court has ample powers to punish debtors who wrongfully conceal assets, i.e., sanctions under Fed.R.Bankr.P. 9011, conversion of the case to chapter 7 (§ 1307(c)), revocation of discharge (§ 1328(e)), referral for criminal charges (18 U.S.C. § 152(1), (2), (3), (7)). Travelers['] position punishes the creditors of the nondisclosing debtor, not just the debtor. The better result is to allow the claim to be prosecuted and collected, order the funds paid toward claims filed in the case, and punish the debtor another way.'
 "240 B.R. at 438-39. See also Donato v. Metropolitan Life Ins. Co., 230 B.R. 418 (Bankr.N.D.Cal. 1999).
 "We agree with the Griner court that a debtor's mere knowledge or awareness of a potential claim and the debtor's failure to include the claim as an asset on the bankruptcy schedules filed with the court, without more, are not sufficient to invoke the application of the doctrine of judicial estoppel. Other courts that recognize the doctrine of judicial estoppel as a bar to a debtor's assertion of a claim not identified as an asset in an earlier bankruptcy proceeding require that the party seeking to apply the doctrine demonstrate (1) that the positions asserted by the party against whom the estoppel is sought are in fact inconsistent, and (2) that the inconsistency would allow a party to benefit from the deliberate manipulation of the courts. Chandler, 35 F. Supp.2d at 863-64. See, also, Ryan Operations, G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3d Cir. 1996); In re Tippins, 221 B.R. 11
(Bankr.N.D.Ala. 1998). Factors such as the chapter under which the debtor sought bankruptcy protection, whether the debtor has been discharged in bankruptcy, and whether the debtor amended the bankruptcy schedules to include the omitted asset should be significant to an inquiry regarding whether to apply the doctrine of judicial estoppel to bar the debtor's claim. Furthermore, under this Court's decision in Porter and the United States bankruptcy court's decision in Griner, a defendant seeking to apply the doctrine must prove prejudice to the defendant. See Porter, 564 So.2d at 437; and Griner, 240 B.R. at 438.
 "The inquiry regarding the applicability of the doctrine of judicial estoppel to a particular case will raise some questions of fact in addition to questions of law. Among those questions of fact often will be whether a debtor who is engaged in bankruptcy proceedings knew or should have known about claims *Page 688 
or causes of action that should be disclosed as assets. We note with approval that the Court of Civil Appeals has so held in Underwood v. First Franklin Financial Corp., 710 So.2d 424 (Ala.Civ.App. 1997). In that case, the court reversed a summary judgment entered on the basis of judicial estoppel, because a question of fact existed as to whether the plaintiff, during her bankruptcy proceedings, had known or should have known that she had causes of action against the defendants she sued approximately eight months after she had obtained a hardship bankruptcy discharge.
 "We conclude that the doctrine of judicial estoppel should not be applied in this case so as to prevent the Jinrights from maintaining their action against Paulk and Option Builders. Although the Jinrights' initial failure in their bankruptcy proceedings to list their claim against Paulk and Option Builders as an asset was inconsistent with the claims they made in their lawsuit against Paulk and Option Builders, nothing before us indicates that the Jinrights will benefit from that omission, nor has there been any showing that Paulk and Option Builders have been prejudiced by the omission. According to the record before us, the Jinrights have pending in the bankruptcy court a motion to amend their Chapter 13 plan so as to pay zero to their unsecured creditors. This case is like Griner — the application of the doctrine of judicial estoppel would punish the Jinrights and their creditors and would produce a windfall for Paulk and Option Builders. On the other hand, if the Jinrights are allowed to maintain their claim against Paulk and Option Builders, then any recovery obtained by the Jinrights presumably will be available for distribution to their creditors through their bankruptcy plan."
Jinright, 758 So.2d at 553 (Ala. 2000).
We conclude that the reasoning of Jinright controls the outcome of this case. This case is like Jinright in that the record in this case is devoid of any evidence indicating prejudice to Lanthrip and the Board caused by Jones's failure to list his lawsuit against them on his Chapter 13 bankruptcy petition. Based on the authority of Jinright and the reasoning employed in that case, we conclude that the trial court erred by entering the summary judgment for Lanthrip and the Board. Therefore, the judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
2990050 — REVERSED AND REMANDED WITH INSTRUCTIONS.
2990265 — APPEAL DISMISSED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur.
 *Page 526