Selma Foundry and Supply Company, Inc. ("Selma Foundry"), Cecil Hinds, and Glenda Hinds appeal from the dismissal of their action alleging fraud, interference with business relations, conversion, trespass, commercially unreasonable disposition of collateral, and other causes of action against The Peoples Bank and Trust Company and two of its officers. Cecil Hinds is the president and the sole shareholder of Selma Foundry. Glenda Hinds is Selma Foundry's secretary. The circuit court based the dismissal on the doctrines of judicial estoppel and res judicata. This appeal also involves the circuit court's determination that Cecil Hinds and Glenda Hinds lacked standing to maintain an action based on their allegation that Peoples Bank had wrongfully foreclosed its lien on their personal residence. Resolution of this appeal depends on the effect of Selma Foundry's failure to list its potential claim against Peoples Bank in the original disclosure statement filed as a part of a previous bankruptcy proceeding. We will also address the circuit court's dismissal of the Hindses' personal actions.
In March 1988, Selma Foundry filed Chapter 11 bankruptcy proceedings. Peoples Bank was one of Selma Foundry's creditors and had previously repossessed most of Selma Foundry's business equipment and inventory. As part of the bankruptcy proceedings, Selma Foundry sought the court's order requiring Peoples Bank to return Selma Foundry's inventory and business facilities.
After a hearing, the bankruptcy court denied this "motion for turnover." 11 U.S.C. § 542. The bankruptcy court stated its reasons:
 "It appearing to the Court that The Peoples Bank and Trust Company holds a perfected security interest in the accounts receivable of the Debtor resulting *Page 846 
from the sale of inventory which accounts were heretofore repossessed from the Debtor by The Peoples Bank and Trust Company on or about March 8, 1988, prior to the filing of this petition; and,
 "It further appearing that there is no equity in said property for the benefit of the estate of the creditors thereof, and that the amount due and owing on said property exceeds the value thereof.
 "It further appearing that the Debtor, as admitted by its principal officer and shareholder, is unable to continue its business as a going concern, nor can adequate protection be given to The Peoples Bank and Trust Company to replace the protection afforded by possession of the aforesaid accounts receivable."
The bankruptcy proceedings continued and, as required by § 521 of the Bankruptcy Code, Selma Foundry filed a disclosure statement and a plan of reorganization. These documents were filed on October 10, 1988, and, although these documents listed an action against a competitor as an asset, they failed to mention any potential or contemplated action against Peoples Bank. On January 19, 1989, Selma Foundry and the Hindses filed the present action against Peoples Bank. Six days later, on January 25, 1989, Selma Foundry amended its disclosure statement in the bankruptcy proceedings to include information relating to the actions against Peoples Bank. Peoples Bank objected, arguing that the action was "without merit and unfounded" and "asserted . . . as a mere delay and hindrance." Over this objection, the bankruptcy court reviewed the amended disclosure statement, determined that it contained adequate information, and approved it on February 3, 1989. Alleging the bankruptcy court's jurisdiction under 28 U.S.C. § 1334 and the relation between the bankruptcy proceedings and the present action, Peoples Bank removed the present action to the bankruptcy court on February 20, 1989. Selma Foundry's reorganization plan was never approved and the bankruptcy proceedings were converted from Chapter 11 (reorganization) to Chapter 7 (liquidation) on April 13, 1989. On April 17, 1990, the bankruptcy court remanded the present action to the circuit court.
In the circuit court, the Bank moved for dismissal of this action. Relying on the doctrine of judicial estoppel, as found in Oneida Motor Freight, Inc. v. United Jersey Bank,848 F.2d 414 (3d Cir. 1988), cert. denied, 488 U.S. 967, 109 S.Ct. 495,102 L.Ed.2d 532 (1988), and on the doctrine of res judicata, as found in Southmark Properties v. Charles House Corp.,742 F.2d 862 (5th Cir. 1984), the circuit court dismissed Selma Foundry's action. The circuit court also held that the Hindses did not have standing to maintain actions based on injuries allegedly inflicted on Selma Foundry and dismissed the Hindses' claims. After denial of the plaintiffs' motion to reconsider, the plaintiffs appealed to this Court.
As the United States Court of Appeals for the Third Circuit recognized, the doctrine of judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." Oneida, 848 F.2d at 419. See also Bracy v. Scott, 589 So.2d 145 (Ala. 1991). InOneida, the debtor instituted bankruptcy proceedings and failed to disclose any claim against United Jersey Bank ("United"). After 13 months, the bankruptcy proceedings were concluded. No mention of Oneida's claim against United was made in Oneida's plan of reorganization or in the bankruptcy court's order confirming that plan. Seven months later, Oneida filed its action against United. The action was based on United's alleged breach of the implied covenant of good faith, fraud, misrepresentation, and other similar wrongful acts.
After the district court dismissed Oneida's action, the court of appeals affirmed, stating:
 "The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and *Page 847 
the court. Given this reliance, we cannot overemphasize the debtor's obligation to provide sufficient data to satisfy the Code standard of 'adequate information.'
 "From the legislative history of [11 U.S.C.] § 1125 we discern that adequate information will be determined by the facts and circumstances of each case. H.R. Rep. No. 595, 97th Cong., 2nd Sess. 266 (1977), U.S. Code Cong. Admin. News 1978, pp. 5787, 6225. It has been specifically held that a debtor must disclose any litigation likely to arise in a non-bankruptcy contest. Monroe County Oil Company v. Amoco Oil Co., 75 B.R. 158 (S.D.Ind. 1987). The result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions. In re Galerie Des Monnaies of Geneva Ltd., 55 B.R. 253 (Bankr.S.D.N.Y. 1985), aff'd, 62 B.R. 224 (Bankr.S.D.N.Y. 1986).
 "A strong interest to achieve finality pervades Chapter 11 arrangements. Bohack Corp. v. Iowa Beef Processors, Inc., 715 F.2d 703 (2d Cir. 1983). This goal of finality was supported by the Supreme Court in Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), holding that confirmation of a plan acts to bar attempts by the parties to relitigate any of the matters that could have been raised during the bankruptcy proceedings. 5 Collier on Bankruptcy ¶ 1141.01[1] (15th ed. 1988). See also, In re Penn Central Transportation Co., 771 F.2d 762 (3rd Cir. 1985), cert. denied, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985)."
Oneida Motor Freight, 848 F.2d at 417 (emphasis added). TheOneida court supported the dismissal with a discussion of Oneida's numerous opportunities during the bankruptcy proceedings to raise the claim.
Even though Oneida is factually similar, this Court notes several facts that prevent the application of the judicial estoppel doctrine to the present case. Unlike Oneida, Selma Foundry expressly listed its claim against Peoples Bank in its amended disclosure statement. Selma Foundry filed the amended disclosure statement just over three months after its original statement, and there is no indication that the bankruptcy court or People's Bank took any action based on the original disclosure statement. The bankruptcy court approved the amended disclosure statement, over the objections of Peoples Bank. Further, the bankruptcy court never approved a plan of reorganization for Selma Foundry and the bankruptcy proceedings were converted from reorganization proceedings to liquidation proceedings. Finally, the bankruptcy court itself remanded this action to the State court for further proceedings, in spite of the fact that Peoples Bank had filed a motion to dismiss. For these reasons, Oneida and the doctrine of judicial estoppel do not require dismissal of Selma Foundry's claims.
The circuit court and Peoples Bank also listed the doctrine of res judicata as an independent basis for dismissal of Selma Foundry's claims. According to this argument, res judicata bars Selma Foundry's present claims because Selma Foundry failed to raise them during the "adversary hearing" on Selma Foundry's "motion for turnover." In support of this argument, Peoples Bank cites Southmark Properties v. Charles House Corp.,742 F.2d 862 (5th Cir. 1984).
This Court has stated the doctrine of res judicata as follows:
 "The elements of res judicata, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits. Hughes v. Allenstein, 514 So.2d 858, 860
(Ala. 1987). If those four elements are present, any claim that was or could have been adjudicated in the prior action is barred from further litigation."
Dairyland Ins. Co. v. Jackson, 566 So.2d 723, 725 (Ala. 1990). Although Southmark Properties, supra, applied the same definition of the doctrine of res judicata, 742 F.2d at 869, an important distinction between *Page 848 
the two cases is evident upon comparison.
In applying the doctrine of res judicata and determining whether the bankruptcy proceedings involved the same "cause of action" or "claim," the Southmark Properties court applied the "transactional test" found in the Restatement (Second) ofJudgments. In a footnote, the court explained the "transactional test," stating:
 "Section 24 of the Restatement provides in part as follows:
 " '(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'
 "Comment c to section 24 of the Restatement provides in part as follows:
 " 'Transaction may be single despite different harms, substantive theories, measures or kinds of relief. . . .
 " 'That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the fact, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.'
 "Appellants note that in determining whether the same causes of action are asserted in subsequent suits, this Court has examined whether the primary right and duty or wrong are the same in each action. See Kemp v. Birmingham News Co., 608 F.2d 1049, 1052 (5th Cir. 1979). However, this Court, sitting en banc in Nilsen v. City of Moss Point, Miss., 701 F.2d 556, 560 n. 4 (5th Cir. 1983), stated that the Restatement's transactional test 'represents the modern view' and is preferable to the test enunciated in Kemp."
Southmark Properties, 742 F.2d at 868-69 n. 12. Because the bankruptcy proceedings and the subsequent claim involved the "same principal transaction," the court held that the doctrine of res judicata barred the subsequent claim if the subsequent claim could have been raised in the bankruptcy proceedings. Id.
at 871.
Alabama does not use the Restatement's "same transaction" test. In Dairyland, supra, this court stated Alabama's test for determining whether the prior judgment and the subsequent claim presented the same cause of action:
 "The determination of whether the cause of action is the same in two separate suits depends on whether the issues in the two actions are the same and whether the same evidence would support a recovery for the plaintiff in both suits. Dominex, Inc. v. Key, 456 So.2d 1047, 1054 (Ala. 1984). Stated differently, the fourth element is met when the issues involved in the earlier suit comprehended all that is involved in the issues of the later suit. Adams v. Powell, 225 Ala. 300, 142 So. 537 (1932)."
Dairyland Ins. Co., 566 So.2d at 726. This test prevents application of the res judicata doctrine to Selma Foundry's present claims. In the present case, the issues in the "adversary hearing" on Selma Foundry's "motion for turnover" are plainly stated in the bankruptcy court's order denying the motion:
 "It further appearing that the Debtor, as admitted by its principal officer and shareholder, is unable to continue its business as a going concern, nor can adequate protection be given to The Peoples Bank and Trust Company to replace the protection afforded by possession of the aforesaid accounts receivable."
A ruling on the "turnover proceedings" did not require a decision on the merits of Selma Foundry's present claims. Further, "turnover proceedings" are not the proper forum for litigation of tort claims. In re FLR Co., 58 B.R. 632
(Bankr.W.D.Pa. 1985).
This Court also notes that the bankruptcy court admitted its lack of jurisdiction when it stated: *Page 849 
 "The action filed by [Selma Foundry] on January 19, 1989, in the Circuit Court of Dallas County, Alabama could not have been commenced in a court of the United States absent jurisdiction under 28 U.S.C. § 1334. Further, the action commenced in the state court forum can be timely adjudicated in the Circuit Court of Dallas County, Alabama, where jurisdiction is appropriate. Therefore, in the interest of justice, comity with state courts and respect for state law [Selma Foundry's] claims are — REMANDED."
For these reasons, the doctrine of res judicata does not require dismissal of Selma Foundry's present claims.
Turning to the issue of standing, this Court notes:
 "In considering a motion to dismiss, a court construes the allegations of the complaint in a light most favorable to the plaintiff, with all doubts and allegations resolved in his favor. Rice v. United Insurance Company of America, 465 So.2d 1100 (Ala. 1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief under some cognizable theory of law. Strain v. Hinkle, 457 So.2d 394 (Ala. 1984)."
Morton v. Prescott, 564 So.2d 913, 916 (Ala. 1990). "A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled." Rule 8(a), Ala.R.Civ.P. Rule 8(f) states that "[a]ll pleadings shall be so construed as to do substantial justice."
In the present case, the Hindses do not argue that status as a corporate officer or shareholder creates standing for the individual to prosecute an action based on injury to the corporation. The Hindses base their claims on the loss of their personal residence that they say had served as collateral for loans made to Selma Foundry. The Hindses have demanded judgment in the form of money damages. As stated in 38 C.J.S.Guaranty, § 109 at 1296 (1943): "In general a creditor is under a duty to avoid doing anything which will prejudice the guarantor's rights and remedies against the principal and with respect to security relied on by the guarantor for reimbursement." Id. (footnote omitted). The Hindses also allege that Peoples Bank maliciously forced Selma Foundry into bankruptcy. Although a more definite statement of their claims may be required, dismissal was not proper. Accordingly, this Court reverses the trial court's dismissal of the Hindses' claims and remands the case to allow the Hindses to make a more definite statement. See Rule 12(e), Ala. R.Civ.P.
Because the doctrine of judicial estoppel and the doctrine of res judicata are not properly applicable and because the Hindses have alleged facts that may entitle them to relief, the circuit court's judgment is reversed and this case is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.